UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X

**SANTO FERNANDEZ,**                        :

                   Plaintiff,        :

                                  :   **MEMORANDUM DECISION AND ORDER**

         - against -          :

**COMMISSIONER OF SOCIAL SECURITY,**   :   20-CV-3959 (AMD)

               Defendant.        :

                                  :

--------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      The plaintiff challenges the Social Security Commissioner's decision that he was not disabled for the purpose of receiving Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). (ECF No. 1 ¶ 1; ECF No. 14-1 at 5.) Before the Court are the parties' cross-motions for judgment on the pleadings. (ECF Nos. 10, 14.) For the reasons set forth below, the plaintiff's motion for judgment on the pleadings is granted, the Commissioner's motion is denied, and the case is remanded for further proceedings consistent with this opinion.

## BACKGROUND

      On April 21, 2016, the 56-year-old plaintiff applied for DIB and SSI benefits, alleging disability beginning on January 15, 2016, caused by "[b]ack, neck, right arm, [and] right leg pain" and high blood pressure. (Tr. 22, 240-251, 292.) The Social Security Administration ("SSA") denied his claim after initial review on June 14, 2016. (Tr. 93-110.) The plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on August 15, 2016. (Tr. 109-10.) ALJ Ifeoma N. Iwuamadi held a hearing on February 28, 2019, at which a vocational expert, Amy Leopold, (the "VE") and the plaintiff—who was represented by counsel—testified.

(Tr. 47-72.)  The ALJ considered the plaintiff's medical records, including the diagnosis letters and notes of Dr. Teresella Gondolo, a neurologist who had treated the plaintiff since 2014.  The record does not include any records from before 2017.  In a form completed in April 2017, Dr. Gondolo diagnosed the plaintiff with a learning disability, and "[s]enile dementia Alzheimer's type" ("SDAT").[1]  (Tr. 905.)  She wrote, "The diagnosis of SDAT . . . is based on [a] history of deterioration of memory, inability to remember words, places, names and disorientation to date, time, place and space.  There is a loss of capability to calculate, add, multiply, divide and subtract.  This has been progressive for the past few years." (*Id.*)  Progress notes reflect that Dr. Gondolo examined the plaintiff on May 23, 2017, June 20, 2017 and September 12, 2017, and that she observed after each visit, "The patient is alert and well oriented x3.  Repetition, naming and comprehension, and judgement [sic] are normal.  Immediate, recent, and remote memories are intact.  Affect and behavior are appropriate."  (Tr. 647, 655-62.)  In an August 9, 2018 letter, Dr. Gondolo opined on the plaintiff's ability to work:

> [The plaintiff] has been seen in my office for a neurological evaluation and follow up.  He has been diagnosed with memory loss and lumbar/cervical radiculopathy.  Due to his medical condition[,] he is totally and permanently disabled.

(Tr. 1082.)  In an October 18, 2018 letter, she included bilateral carpal tunnel syndrome to the previous diagnoses and reached the same disability conclusion.  (Tr. 1123.)

In an April 16, 2019 decision, the ALJ denied the plaintiff's claim for benefits.  (Tr. 16-34.)  She determined that the plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 15, 2016.[2]  (Tr. 24.)  The ALJ found that the plaintiff had the

---

[1] The form is dated September 12, 2017 on some pages, but the parties agree that it was submitted in April 2017.  (ECF No. 10 at 13 n.3; ECF No. 14 at 18.)

[2] The ALJ acknowledged that the plaintiff received $29,000 in 2016, "which exceed[ed] the applicable substantial gainful activity threshold," but noted that the plaintiff testified that "this money stemmed from a lawsuit settlement related to income he was owed from a past employer."  (Tr. 24.)

following severe impairments: "[C]hiari I malformation, bilateral carpal tunnel syndrome[,] status post-left carpal tunnel release surgery, bilateral shoulder tears, cervical and lumbar degenerative disc disease, cervical radiculopathy, right knee meniscus tear[,] status post-arthroscopic surgery, obesity, [a] learning disorder, and senile dementia Alzheimer's type." (Tr. 25.) The ALJ determined that none of these impairments or combination of impairments met or equaled the severity of one of the listed impairments in the applicable Social Security regulations. (*Id.*) She found that "the severity of the [plaintiff's] mental impairments, considered singly and in combination, [did] not meet or medical equally the criteria" of the relevant Social Security regulations. (*Id.* (citing Listings 12.02 and 12.05).)

The ALJ concluded that the plaintiff had the residual functional capacity ("RFC") to "perform less than the full range of light work" with the following exceptions:

> He can lift/carry and push/pull 20 pounds occasionally and less than 10 pounds frequently. During an eight-hour workday, he can sit up for up to six hours and stand/walk for up to six hours. For every 30 minutes of standing or walking, he must have the opportunity to sit up for up to five minutes while remaining on task. He can occasionally reach overhead bilaterally. He can frequently reach in all other directions, handling, and finger bilaterally. He can occasionally climb ramps/stairs and stoop. He cannot kneel, crouch, or crawl. He is limited to performing simple, routine tasks and making simple work-related decisions.

(Tr. 28.) The ALJ explained that "limiting the [plaintiff] to performing simple, routine tasks and making simple work-related decisions adequately addresse[d] any limitations stemming from the [plaintiff's] mental impairments. Further restrictions are not supported given the lack of objective finding indicative of ongoing cognitive deficits." (Tr. 31.) In determining the plaintiff's RFC, the ALJ assigned "little weigh[t] to the disability conclusions of Dr. Gondolo because they are vague, [did] not provide a function-by-function assessment of the [plaintiff's] retained abilities, and concern an issue reserved to the [C]ommissioner." (*Id.*) With respect to Dr. Gondolo's notes from May 2017, June 2017 and September 2017, the ALJ found:

> [M]ental status examinations documented in Dr. Gondolo's progress notes did not generally reflect cognitive deficits.  More specifically, the [plaintiff] generally demonstrated normal repetition, naming, comprehension, judgment, speech, thought process, and memory.

(*Id.*)  The ALJ also discounted Dr. Gondolo's April 2017 findings because they did not appear in her progress notes:

> Additionally, in a statement submitted in April 2017, Dr. Gondolo indicated that the [plaintiff's] Alzheimer's and learning disorder were characterized by memory loss, an inability to retain new information, and [an] inability to recall old information, and [an] inability to perform calculations.  She cited examination findings that do not appear in her progress notes, including a lack of orientation to place and date.  According to Dr. Gondolo, these conditions interfered with the [plaintiff's] ability to perform activities of daily living and prevented him from reading, writing, and speaking English.

(*Id.*)  Finally, based on the VE's testimony, the ALJ determined that although the plaintiff could not return to his past relevant work as "a driver and a truck driver-route driver," he could do unskilled work, including as a hand packager, mail sorter and bench assembler.  (Tr. 32-33.)

On June 25, 2020, the Appeals Council denied the plaintiff's request for review, rendering the ALJ's decision final.  (Tr. 1-4.)

## STANDARD OF REVIEW

An ALJ employs a five-step sequential process to evaluate whether a claimant meets the definition of disabled under the Act.  *See* 20 C.F.R. § 404.1520(a)(4):

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (internal quotation marks and citation omitted).

4

The claimant "bears the burden of proving his or her case" at steps one through four of this framework. *Id.* at 128 (citing *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004)). At step five, the burden shifts to the Commissioner, who must show that given the claimant's RFC, age, education and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997). A court reviewing a Commissioner's final decision to deny DIB or SSI benefits must "determine[e] whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)). Substantial evidence amounts to "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If substantial evidence exists to support the Commissioner's factual findings, those findings must be sustained. 42 U.S.C. § 405(g). A district court judge cannot substitute her own judgment for that of the Commissioner, "even if [she] might justifiably have reached a different result upon *de novo* review." *Cerqueira v. Colvin*, No. 14-CV-1134, 2015 WL 4656626, at *11 (E.D.N.Y. Aug. 5, 2015) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

Although the Commissioner's factual determinations are binding when they are supported by substantial evidence, a court will not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (alteration in original) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). Thus, "legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009).

"Remand is warranted where 'there are gaps in the administrative record or the ALJ has applied an improper legal standard.'" *Antonetti v. Comm'r of Soc. Sec. Admin.*, No. 19-CV-1396, 2020 WL 3893010, at *4 (E.D.N.Y. July 11, 2020) (quoting *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999)). "Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision." *Id.* (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).

## DISCUSSION

The plaintiff challenges the ALJ's RFC determination on the grounds that she did not seek additional evidence to address a gap in the record, or give proper weight to the opinion of the plaintiff's treating physician, Dr. Gondolo.  (ECF No. 14-1 at 15-19, 23.)

**I.    The ALJ's Duty to Develop the Record Regarding the Treating Physician's Opinion**

"According to the SSA regulations, the Commissioner must 'make every reasonable effort' to assist the claimant in developing a 'complete medical history.'" *Antonetti*, 2020 WL 3893010, at *5 (quoting 20 C.F.R. § 404.1512(b)(1)(i-ii)).  "It is the rule in our circuit that the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (alteration in original) (citation and quotation marks omitted); *see also Moran v. Astrue*, 569 F.3d 108, 112-13 (2d Cir. 2009) ("[I]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." (alteration in original) (quoting *Butts*, 388 F.3d at 386)).  "This duty . . . exists even when . . . the claimant is represented by counsel." *Pratts*, 94 F.3d at 37 (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

For claims filed before March 27, 2017, the ALJ must apply the "treating physician rule," 20 C.F.R. § 404.1520c(c)(2), which requires that the ALJ give "controlling weight" to the

medical opinion of a doctor who has "an ongoing treatment relationship" with the plaintiff as long as the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 416.927(a)(2), (c)(2). "[I]f the ALJ decides the opinion is not entitled to controlling weight, [she] must determine how much weight, if any, to give it." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "In doing so, [the ALJ] must explicitly consider the following, nonexclusive *Burgess* factors: (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* at 95-96 (quotation marks omitted) (quoting *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014)); *see also Burgess*, 537 F.3d at 129. "At both steps, the ALJ must give good reasons in [her] notice of determination or decision for the weight [she] gives the treating source's medical opinion." *Estrella*, 925 F.3d at 96 (alterations, citation and quotation marks omitted). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error." *Id.* "[A] reviewing court should remand for failure to explicitly consider the *Burgess* factors unless a searching review of the record shows that the ALJ has provided 'good reasons' for [her] weight assessment." *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) (citing *Estrella*, 925 F.3d at 95-96).

The ALJ's duty to develop the record also applies to the findings of a claimant's treating physician. "[I]f the claimant's medical record is inadequate, it is 'the ALJ's duty to seek additional information from the [treating physician] *sua sponte*." *Antonetti*, 2020 WL 3893010, at *5 (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)); *see also Rosa*, 168 F.3d at 79 ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear

gaps in the administrative record."). "[W]here . . . an ALJ concludes that the opinions or reports rendered by a claimant's treating physicians lack objective clinical findings, she may not reject the opinion as unsupported by objective medical evidence without taking affirmative steps to develop the record in this regard." *Rivas v. Barnhart*, No. 01-CV-3672, 2005 WL 183139, at *23 (S.D.N.Y. Jan. 27, 2005). "Moreover, an ALJ's affirmative obligation to develop the record also includes the obligation to contact a claimant's treating physicians and obtain their opinions regarding the claimant's residual functional capacity." *Tirrell v. Berryhill*, No. 15-CV-518, 2018 WL 2048879, at *17 (E.D.N.Y. May 1, 2018) (alteration and quotation marks omitted) (citing *Tirado v. Astrue*, No. 10-CV-2482, 2012 WL 259914, at *4 (E.D.N.Y. Jan. 25, 2012)).

Dr. Teresella Gondolo started treating the plaintiff in 2014. (Tr. 905.) In April 2017, she observed that the plaintiff had "[s]enile dementia Alzheimer's type" "characterized by memory loss, an inability to retain new information, and [an] inability to recall old information, and [an] inability to perform calculations."[3] (Tr. 31, 905.) Dr. Gondolo wrote that the diagnosis of SDAT was based "on [a] history of deterioration of memory, inability to remember words, places, names and disorientation to date, time, place and space," and that the disease "been progressive for the past few years." (Tr. 905.) However, in progress notes from May, June and September of 2017, Dr. Gondolo observed that "the [plaintiff] generally demonstrated normal repetition, naming, comprehension, judgment, speech, thought process, and memory." (Tr. 31 (citing Tr. 647, 655-62).) The ALJ assigned less-than-controlling weight to Dr. Gondolo's August 2018 and October 2018 opinions—in which she found that the plaintiff "is totally and permanently disabled"—and discounted the April 2017 findings because the doctor "cited examination findings that do not appear in her progress notes, including a lack of orientation to

---

[3] Dr. Gondolo also diagnosed the plaintiff with a learning disorder. (Tr. 31, 905.)

place and date." (*Id.*)  The record does not include any of Dr. Gondolo's notes from before April 2017, despite the fact that she started treating the plaintiff in 2014, or examination notes from any other neurologist.[4]  The ALJ should have tried to get Dr. Gondolo's earlier progress notes, which might support her April 2017 findings as well as her August 2018 and October 2018 opinions.  In addition, the ALJ could have asked Dr. Gondolo to explain the discrepancy between her April 2017 opinion and the progress notes in record.  *See Antonetti*, 2020 WL 3893010, at *5 ("The ALJ either knew, or should have known of the existence of additional treatment notes absent from the record, based on [the treating physician's] statement that he had seen the plaintiff on a monthly basis for a period of two years, and that his opinions were supported by his treatment notes.").

The ALJ also decided that Dr. Gondolo's opinion merited little weight because her "disability conclusions . . . [did] not provide a function-by-function assessment of the [plaintiff's] retained abilities, and concern an issue reserved to the [C]ommissioner."  But the ALJ had an affirmative obligation to contact Dr. Gondolo, the plaintiff's treating physician, and obtain her detailed opinion about the plaintiff's RFC.  *See Tirrell*, 2018 WL 2048879, at *17; *see also Rosa*, 168 F.3d at 80 (holding that where the treating physician's "assessment was only one page in length and, as the ALJ recognized, wholly conclusory . . . the ALJ should have taken steps directing [the plaintiff] to ask [the treating physician] to supplement his finding"); *id.* ("[A] treating physician's 'failure to include this type of support for the findings in his report does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case.'"

---

[4] The Commissioner suggests that Dr. Alvaro Olayo observed "no neurologic or psychiatric symptoms" in November 2017, June 2018 or August 2018.  (ECF No. 10-1 at 12-13.)  Dr. Olayo is not a neurologist and apparently specializes in family medicine.

(quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998))).  "Accordingly, the [C]ourt cannot find that the ALJ has properly weighed [Dr. Gondolo's] opinion."  *Antonetti*, 2020 WL 3893010, at *5.

Remand is required so that the ALJ can develop the record fully, and reconsider the weight Dr. Gondolo's opinion warrants in light of a complete medical record.

## II.   The ALJ's Application of the Treating Physician Rule

Although the ALJ recognized that Dr. Gondolo was the plaintiff's treating physician (ECF No. 7 at 26 (describing Dr. Gondolo as the plaintiff's "treating neurologist")), she did not refer to the controlling weight presumption as she was required to do.  (Tr. 17-18); *see* 20 C.F.R. § 416.927(c)(2).

The ALJ did not address the first *Burgess* factor—the frequency, length, nature and extent of Dr. Gondolo's treatment of the plaintiff.  *See Estrella*, 925 F.3d at 96 (highlighting the ALJ's failure to consider physician's treatment of the plaintiff over approximately five years). Although the ALJ discussed the second factor—whether the medical evidence supported Dr. Gondolo's opinion and her April 2017 findings—she had an affirmative obligation to develop the record.  In addition, while the ALJ addressed the third *Burgess* factor—the consistency of Dr. Gondolo's opinion with the remaining medical evidence—she relied in part on the plaintiff's testimony about his daily activities, "including attending to his personal care, socializing with friends, preparing simple meals, washing dishes, shopping with his brother, and driving, although he indicated that he was unable to do laundry."  (Tr. 31.)  The fact that the plaintiff can function in these basic ways is not a reason to reject a treating physician's opinions.  *See Cabibi v. Colvin*, 50 F. Supp. 3d 213, 238 (E.D.N.Y. 2014) ("Indeed, it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, 'as people should not be penalized for enduring the pain of their disability in order to care for

themselves.'" (quoting *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000))); *see also*

*Nusraty v. Colvin*, 213 F. Supp. 3d 425, 440 (E.D.N.Y. 2016) ("Because 'a claimant need not be

an invalid to be found disabled,' Plaintiff's reports of her daily activities by themselves are not

substantial evidence that she was not disabled and are insufficient to justify according [the

treating physician's] opinion limited weight." (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d

Cir. 1998))); *Mahon v. Colvin*, No. 15-CV-2641, 2017 WL 1232471, at *15 (E.D.N.Y. Mar. 31,

2017).

On remand, after the ALJ develops the record of the plaintiff's mental impairments, she

should apply all four *Burgess* factors.[5]

---

[5] The plaintiff also argues that the ALJ improperly discredited the plaintiff's allegations of pain, and his claimed lack of proficiency in English.  (ECF No. 14-1 at 19-22, 23-24.)  The ALJ made no credibility determination with respect to the plaintiff's allegations of pain.  She simply found that "the [plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," including the plaintiff's reports of improvements and treating physician Dr. Jeffrey Rosen's opinion that the plaintiff "did not have any functional limitations" relating to the his right knee impairment.  (Tr. 29-30.)

The ALJ's finding about the plaintiff's English proficiency was not material to her disability determination, so I do not address it.

**CONCLUSION**

The plaintiff's motion for judgment on the pleadings is granted and the Commissioner's

motion is denied.  The case is remanded for further proceedings consistent with this opinion.


**SO ORDERED.**

                       s/Ann M. Donnelly
                      _____
                      ANN M. DONNELLY
                      United States District Judge


Dated: Brooklyn, New York
        March 28, 2022